IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

―――――――――――――――――――――――――――――――――――――――――――――――――――

MELISSA HAMMOND,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        No. 20-1158-TMP
                                    )
COMMISSIONER OF SOCIAL              )
SECURITY ADMINISTRATION,            )
                                    )
        Defendant.                  )

―――――――――――――――――――――――――――――――――――――――――――――――――――

ORDER AFFIRMING THE COMMISSIONER'S DECISION

―――――――――――――――――――――――――――――――――――――――――――――――――――

On July 21, 2020, Melissa Hammond filed a Complaint seeking judicial review of a social security disability benefits decision. (ECF No. 1.) Hammond seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. For the reasons below, the decision of the Commissioner is AFFIRMED.

I.    BACKGROUND

On November 30, 2017, Hammond applied for Social Security disability insurance benefits, as well as disabled widow's benefits, under Title II of the Act. (R. 10.) That same day, she filed for supplemental security income as well. In all applications, she alleged a disability beginning on October 16, 2015. (Id.) This date was later amended to May 17, 2017. (Id.)

Hammond's initial applications were all denied on June 7, 2018, and after reconsideration on December 5, 2018. (Id.) Hammond then requested a hearing on January 8, 2019, and that hearing was held on August 13, 2019, over video. (Id.)

After the hearing, the ALJ preliminarily determined that Hammond met the insured status requirement of the Act and the non-disability requirements for disabled widow's benefits contained in the Act. (R. 13.) The ALJ then used the five-step analysis to conclude that Hammond was not disabled from May 17, 2017, through the date of the ALJ's decision. (R. 10-27.) For the first step, the ALJ determined that Hammond had not engaged in any substantial gainful activity since May 17, 2017, the alleged onset date of her disability. (R. 13.) For the second step, the ALJ found that Hammond had the following severe impairments: "obesity; hypertension; a history of cardiac arrhythmias (palpitations, atrial fibrillation) and syncope; a history of asthma/bronchitis; osteoarthritis of the right knee; major depressive disorder; and anxiety." (R. 14.) Hammond did not allege any other severe impairments at the hearing or in any filings. The ALJ noted that Hammond had alleged numbness in her upper extremities at the hearing, but that no medical evidence in the record supported this claim and that prior examinations all showed normal sensation. (R. 14-15.)

At the third step, the ALJ concluded that Hammond's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15.) The ALJ noted that Hammond did not advance an argument along these lines, but instead argued that she was limited only to "sedentary work or less," which demands a disability finding. (Id.) As a result, the ALJ considered each of Hammond's severe impairments individually and compared them to the severe impairment listings contained in in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) None reached the level of severity required by the listings. (Id.) Similarly, Hammond's mental impairments all imposed only "moderate limitations" rather than the one "extreme" or two "marked" limitations required. (R. 16-17.) These determinations were based on examinations, reviews, and reports from treating and non-treating clinicians.

Accordingly, the ALJ then had to determine whether Hammond retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Hammond] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs. She can never climb ladders, ropes or scaffolds. [Hammond] can occasionally push, pull, and operate foot controls with the bilateral lower extremities. She cannot work with concentrated exposure to temperature extremes. The claimant cannot work with concentrated

-3-

> exposure to dusts, fumes, odors, gases, and poor
> ventilation. She cannot work at unprotected heights or
> around unguarded moving machinery. [Hammond] cannot walk
> on rough or uneven surfaces. She can perform simple,
> routine tasks with occasional workplace changes and
> occasional interaction with the general public,
> coworkers, and supervisors.

(R. 17.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves

lifting no more than 20 pounds at a time with frequent lifting or

carrying of objects weighing up to 10 pounds." Additionally, light

work includes jobs "requir[ing] a good deal of walking or standing,

or [that] involve[e] sitting most of the time with some pushing

and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

In reaching this RFC determination, the ALJ discussed

Hammond's testimony and the medical evidence in the record. (R.

18-25.) The ALJ summarized Hammond's account of her symptoms and

condition as follows:

> [Hammond] alleged disability resulting primarily from
> symptoms associated with her physical impairments . . .
> The claimant stated that she has difficulty managing
> medications due to confusion and memory and she has
> anxiety. She alleged numbness in the arms . . . irregular
> heartbeats, shortness of breath, difficulty walking and
> climbing stairs, swelling in the legs, chest pain and
> syncope two to three times a week.

(R. 18.) The ALJ concluded that "objective examinations and other

diagnostic techniques show a few mild and moderate abnormalities

that support limiting the claimant to a reduced range of light

work," but that "the findings are not of the severity to support

greater limitations and many examinations showed normal findings

that contradict the claimant's allegations." (R. 21.) The ALJ then

-4-

considered Hammond's medical records and treatment history, finding that they "support no greater limitations than the limitations listed above in the RFC." (R. 19.) Medical evidence showed "a long history of hypertension, cardiac arrhythmias (palpitations, atrial fibrillation) and syncope, and asthma/bronchitis." (Id.) In her last primary care visit before the alleged onset date, a physical examination showed "rhonchi . . . [and] mildly decreased reflexes in the lower extremities" but "otherwise, the examination showed normal findings throughout the body, including normal cardiovascular findings and no edema." (Id.)

The ALJ then summarized Hammond's treatments from her disability onset date to present, including a visit to Dr. Donita Keown, a consultative examiner for the State agency for disability determination services. (Id.)

> The physical examination showed no significant abnormalities throughout the body. She moved from seated to standing unremarkably, she did not require assistive devices, and she had a normal straightaway walk . . . The examination showed grossly normal cardiovascular and respiratory findings, including no edema and regular rhythm and rate. She had full range of motion throughout the body despite a complaint of discomfort at the right knee. Furthermore, the examination showed good strength throughout all extremities, including grip, normal reflexes, and no sensory dysfunction. She also exhibited normal grasping and manipulation with the bilateral hands.

(R. 19-20) (internal citations omitted). Hammond's other physical examinations were consistent with this analysis, typically finding

"normal cardiovascular and respiratory findings" with somewhat recurrent issues regarding right knee flexibility. (R. 20.) After her visit to Dr. Keown, Hammond had multiple primary care visits of record. First, she arrived at the emergency room with severely elevated blood pressure on July 9, 2018, because she ran out of medication. At this visit, she denied having chest pain, dizziness, abdominal pain, nausea, vomiting, tingling, and weakness, and the physical examination showed "normal cardiovascular and respiratory findings." (Id.) Her next primary care visit showed "new findings of effusion at the right knee with a severe limp," but this resolved itself by January 9, 2019. (Id.) In her last primary care visit of record, the physical examination "showed mildly decreased reflexes at the lower extremities and . . . pain with passive range of motion at the right knee." But otherwise, there were "no musculoskeletal or neurological abnormalities, no effusion, and normal respiratory and cardiovascular findings, including regular rate and rhythm." (Id.) The ALJ also considered the analysis of Dr. Samuel Chung, who Hammond visited at the request of her attorney. (R. 21.) Dr. Chung's analysis also showed "normal cardiovascular and respiratory findings . . . [and] normal reflexes, strength, range of motion, and sensation throughout the lower extremities." (Id.)

The ALJ also considered the reports of two State agency medical consultants, Dr. Thomas Thrush and Dr. Ok Yung Chung, who

reviewed all of Hammond's medical records as part of her benefit application. (R. 24.) Dr. Thrush reviewed Hammond's records on June 2, 2018, and found that "she could perform light work except occasionally climbing ladders, ropes, or scaffolds, frequently performing all other postural maneuvers, and avoiding concentrated exposure to hazards." (Id.) Dr. Yung Chung's review came on December 4, 2018, and was consistent with Dr. Thrush's, finding that Hammond "could perform light work except never climbing ladders, ropes, or scaffolds, occasionally performing all other postural maneuvers, avoiding concentrated exposure to temperature extremes, and avoiding all exposure to hazards." (Id.)

The ALJ then examined Hammond's psychological and psychiatric impairments and treatments. Hammond had a long history of "routine, conservative mental health treatment at Pathways of Tennessee since her husband's death in 2013." (R. 22.) Dr. Robert Paul and Dr. Robert de la Torre reviewed Hammond's case records from her treatment and both noted that "she could understand, remember, and carry out simple tasks with brief, superficial, and task-focused interactions with supervisors and coworkers, occasional contact with the public, and infrequent changes in a routine work setting." (R. 24.) The ALJ explained that "the objective mental status examinations show some abnormalities that support these limitations, but they also show many normal findings that

contradict greater limitations" and found these opinions persuasive. (Id.)

The ALJ then looked at all of the medical evidence holistically, without "any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from [Hammond's] medical sources." (Id.) The ALJ found that the State agency medical consultants, Dr. Thomas Thrush and Dr. OK Yung Chung, had rendered opinions "consistent with the medical evidence of record, to which they cited and summarized in support of their assessments," but that Dr. Thrush's opinion was "more persuasive" since he had more evidence available at the time of his review.[1] (Id.) The ALJ found that the psychological reviews of Drs. Paul and de la Torre were also persuasive, since they were familiar with Social Security disability rules and the medical evidence of record. (Id.) Dr. Keown's opinion was "somewhat" persuasive since it was formed after an "objective physical examination" and was consistent with that examination's findings. (Id.) However, the ALJ found Dr. Samuel Chung's opinion "not persuasive because although Dr. Chung provided a physical examination to support the opinion, that examination [] showed mostly mild findings that contradict [his]

---

[1]This statement is inconsistent with the timeline provided elsewhere in the ALJ's opinion, since Dr. Yung Chung's review came after Dr. Thrush's. The government, in reply, describes the inconsistency as a "typographical" error. (ECF No. 22 at 11.)

extreme opinion" that Hammond's conditions precluded any competitive employment. (R. 25.) The ALJ explained that:

> Although the examination showed mostly normal strength and range of motion throughout the body, with a few mild exceptions, Dr. Chung assessed extreme exertional and postural restrictions. Furthermore, as discussed above, Dr. Chung's examination showed several abnormalities that are inconsistent with [Hammond's] treatment records, such as the upper extremity findings. Moreover, several of Dr. Chung's opinions included no medical basis in his findings or the other medical evidence of record, such as limiting [Hammond] to occasional handling and fingering, frequent feeling, never pushing or pulling with the upper extremities, never working around humidity, wetness, or vibrations, and working in a quiet environment. Dr. Chung also assessed an extreme vision limitation, even though he stated that he performed no optometry examination and reported normal findings on his cursory examination of the eyes. Consequently, many of the limitations appear based on [Hammond's] subjective reporting. For example, [Hammond] reported to Dr. Chung that she could not maintain normal activities of daily living. However, her treatment records state that she could do most chores. She was also attempting to move and live by herself, to the extent possible within her financial limitations (and social programs), which suggest that she could care for herself. Another record shows that she was doing laundry in June 2019. The reported work history to Dr. Chung was also inconsistent with past reports.

(Id.) (internal citations omitted). In light of this evidence, the ALJ concluded that Hammond's RFC included light work with the limitations described above.

At step four, the ALJ found that Hammond was unable to perform any past relevant work. (Id.) A vocational expert assessed that "a hypothetical individual with the claimant's age, education, work experience, and residual functional capacity could not perform any of the claimant's past relevant work," which included jobs as a

"day worker," "corrections officer," and "certified nurse aide." (R. 26.) Hammond's attorney agreed. (R. 25.)

Finally, at step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 26.) The ALJ explained that "[Hammond's] ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations." (Id.) The vocational expert testified that, considering these limitations along with Hammond's age, education, RFC, and work experience, Hammond was nevertheless "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 27.) Representative jobs included "routing clerk," "mail clerk," and "hand packer/inspector." (Id.)

On September 18, 2019, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Hammond's request for review. (R. 1.) Hammond now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Hammond primarily argues that the ALJ did not afford Dr. Samuel Chung's examination the correct weight under the regulations and that the ALJ improperly granted weight to DDS source forms and statements from non-examining reviewing experts.

-10-

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts

from its weight.' " <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994) (quoting <u>Smith v. Sec'y of Health & Human Servs.</u>, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See

-13-

20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

-14-

## C.   Medical Opinion Evidence

Hammond argues that the ALJ did not follow applicable regulations when determining her RFC and that the ALJ's RFC determination was not supported by substantial evidence. Because both arguments involve the ALJ's consideration of medical opinion evidence, the undersigned addresses them together under the same heading.

As a preliminary matter, because Hammond filed her application for benefits after March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1520c in considering medical opinions and prior administrative medical findings in the record. See Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (E.D. Tenn. 2019). For claims filed before March 27, 2017, 20 C.F.R. § 404.1527 governs the evaluation of medical opinion evidence. The distinction is meaningful because the revisions to the regulatory language "eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion." Lester v. Saul, No. 5:20CV1364, 2020 WL 8093313, at *10 (N.D. Ohio, Dec. 11, 2020), report and recommendation adopted by, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (quoting Ryan L.F. v. Comm'r of Soc. Sec., No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019)). In other words, claims filed on or after March 27, 2017, which fall under 20 C.F.R. § 404.1520c, are not subject to the "treating physician rule." Jones, 392 F. Supp. 3d at 839.

-15-

Much of Hammond's argument rests on precedent and cases decided under the old framework of strictly defined, hierarchical deference depending on the source of the medical opinion. (See ECF No. 17 at 17-20.) Many of Hammond's arguments lack merit because although she references § 404.1520c, she bases her arguments on standards set forth in § 404.1527 and cites exclusively to cases dealing with the evaluation of medical opinion evidence under the prior regulatory language. For example, Hammond states that the ALJ did not "assig[n] most weight to [Dr. Samuel Chung's] opinions," (id. at 17), argues that the ALJ improperly "afford[ed] weight to opinions not so entitled," (id. at 17), frequently asks the court to find that "Dr. Samuel Chung's opinion is entitled to the greatest weight," (id. at 18), and claims that "the ALJ must assign and explain the weight afforded medical opinions in the record," (id. at 15). Hammond also asserts that "The Regulation requires that all medical opinions will be weighed, regardless of source" and that "failure to do so is error requiring reversal." (Id. at 16.) The changed approach contained in 20 CFR 404.1520c, Hammond argues, is a "dilution of the [articulation] requirements" for weighing medical opinion evidence. (Id.)

This court considered completely identical arguments regarding the new regulations in Strawn v. Commissioner of Social Security, No. 20-cv-1065-TMP, 2021 WL 3487176 (W.D. Tenn. Aug. 9, 2021). The court rejected those arguments there and does so again

-16-

here. The changes contained in 20 C.F.R. § 404.1520c do not represent the "dilution" of a previous standard, but instead a wholly reoriented approach towards medical opinion evidence. "We will not defer or give *any* specific evidentiary weight, including controlling weight, to *any* medical opinion{s} or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (emphasis added). Instead, ALJs now "articulate [their] determination or decision [of] how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings" in the record. Id. Persuasiveness is judged based on the consideration of any medical opinion's supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. § 404.1520(b)-(c). Other factors that may be considered include the opinion source's familiarity with the other evidence in the claim, and experience with program policy and requirements. Id. The ALJ is only required to explain "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in order to comply with the regulation. 20 C.F.R. § 404.1520(b)(2); see also Strawn, 2021 WL 3487176, at *10 ("Accordingly, the ALJ was not obligated to show greater deference to the opinions of the treating sources than those of the consultative and non-examining sources. Rather, the

-17-

ALJ needed only consider the persuasiveness of each opinion.")
(internal citations omitted).

Here, the ALJ followed the law. The ALJ explained that Dr.
Samuel Chung's opinion was "not persuasive," because it "showed
several abnormalities that are inconsistent with the claimant's
treatment records" and because "several of Dr. Chung's opinions
included no medical basis in his findings or the other medical
evidence of record." (R. 25.) These included diagnosing an extreme
vision limitation without performing an optometry examination and
finding upper extremity limitations despite mostly normal strength
and range of motion findings. (Id.) Further, every other medical
opinion in the record disagreed with Dr. Samuel Chung's findings.
For example, Dr. Keown, who also personally examined Hammond, found
"no significant abnormalities throughout the body" and "grossly
normal cardiovascular and respiratory findings." (R. 19-20.) The
ALJ explained that Dr. Keown's opinion was "somewhat persuasive
because [she] supported the opinion with an objective physical
examination and that above-discussed examination showed normal
findings that are consistent with [her] opinion." (R. 24.) The
opinions of Drs. Paul and de la Torre were also found persuasive,
since they were "consistent with the medical evidence of record,
to which they cited and summarized in support of their
assessments." (Id.) Both Dr. Paul and Dr. de la Torre specialized
in psychology, had extensive experience in assessing claims for

-18-

Social Security Disability, and offered opinions that were consistent with each other as well. (Id.) For every medical opinion, the ALJ properly followed the regulatory procedures, and was well within his role in finding other opinions more persuasive than Dr. Samuel Chung's.

Hammond makes a more specific argument regarding the opinions of Drs. Thrush and Yung Chung, who served as the State agency's medical consultants and conducted an administrative review of Hammond's file. (Id.) Hammond contends that giving these opinions "any weight at all" is "a particularly egregious error committed by a number of Judges." (ECF No. 17 at 18.) Hammond alleges that these opinions are functionally worthless, "as they come from contractors who spend only a few minutes on a file, and are supervised by nonmedical agency employees." (Id.) In support of these allegations, Hammond provides and summarizes a recent *Tennessean* article focusing on administrative contractors such as Drs. Thrush and Yung Chung. (ECF Nos. 17 at 18-19, 17-1.) This court has previously considered this exact same argument, involving the same article and Dr. Thrush (as well as Dr. Samuel Chung) in Lucy v. Saul, No. 19-1083-TMP, 2020 WL 1318803 (W.D. Tenn. Mar. 20, 2020). In that case, the court said the following:

> This court has an extremely limited role in the Social
> Security disability determination process: to evaluate
> whether the ALJ's decision was supported by substantial
> evidence and whether the ALJ used the correct legal
> criteria to make his or her decision. See, e.g., Cardew

v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir.
2018). It is not free to restructure the disability
determination process to suit its policy preferences.
Similarly, the court generally cannot consider evidence
outside of the administrative record, such as newspaper
articles. Miller v. Comm'r of Soc. Sec., 811 F.3d 825,
839 (6th Cir. 2016). Under governing regulations, "an
ALJ is permitted to rely on state agency physician's
opinions to the same extent as she may rely on opinions
from other sources." Reeves v. Comm'r of Soc. Sec., 618
F. App'x 267, 274 (6th Cir. 2015). Governing regulations
also permit ALJ's to consider program knowledge. 20
C.F.R. § 404.1527(c)(6). Lucy's objection is not
supported by law.

Lucy, 2020 WL 1318803, at *7. Hammond makes identical
arguments, and the court's prior analysis adequately addresses
Hammond's claims as well. The court is unable to consider these
claims in our review. Regardless, the record makes clear that the
ALJ went beyond Dr. Thrush's administrative findings and
considered the evaluations of Drs. Chung, Keown, Paul, and de la
Torre as well. (R. 24-25.) Because the ALJ explained his
supportability and consistency findings regarding all of these
medical opinions, Hammond's argument that she was "deprived [] of
a full hearing in a fully-developed claim" because "Dr. Samuel
Chung's opinion for less than a full range of sedentary work should
have been given great weight" must fail. (ECF No. 17 at 20.)

Beyond arguing against allegedly misapplied legal criteria,
Hammond also argues that the ALJ's decision was not supported by
substantial evidence. As discussed above, substantial evidence is
more than a scintilla of evidence but less than a preponderance,
and is "such relevant evidence as a reasonable mind might accept

-20-

as adequate to support a conclusion." Kirk, 667 F.2d at 535 (6th Cir. 1981). Hammond seemingly argues against this well-established precedent in full, however. "The standard used here, that a denial will stand if supported by just more than a scintilla of any evidence provided by SSA's state agency is wrong." (ECF No. 23 at 5.) Instead, Hammond suggests that "the medical opinion evidence given weight must be 'substantial evidence' and the denial by an ALJ must be vacated if not supported by a *preponderance of the substantial evidence* and explained in the Decision." (Id.) (emphasis added).

This construction has no support in case law. Hammond's argument confuses the operating standard imposed on ALJs and the agency, who must base their opinions on a preponderance of the evidence, and the standard of review imposed on reviewing courts, who must uphold the ALJ's initial decision if it is supported by substantial evidence. ALJ's make their decisions based on "a preponderance of the evidence." 20 C.F.R. § 416.1453. At the Appeals Council level, decisions are also reviewed on the "preponderance of the evidence" standard. 20 C.F.R. § 416.1479. But once a case is appealed to federal court, "if the administrative findings are supported by substantial evidence, they are conclusive, and a reviewing court may not reweigh the evidence or substitute its judgment for that of the administrative fact-finder, even if the reviewing court views the evidence as

preponderating otherwise." <u>Powell v. Schweiker</u>, 514 F. Supp. 439, 450 (M.D. Fla. 1981); 42 U.S.C. § 405(g). This approach is supported by a mountain of case law. <u>See</u> <u>Cardew</u>, 896 F.3d at 745-46; <u>Blakley</u>, 581 F.3d at 406. Hammond's assertions to the contrary are not accurate.

With the correct "substantial evidence" standard established, the court must evaluate Hammond's arguments regarding an alleged lack of substantial evidence in the ALJ's opinion. First, Hammond argues that the opinions of Drs. Thrush and Yung Chung cannot be "substantial evidence," seemingly as a matter of law. (ECF No. 23 at 6) ("<u>Richardson</u> clearly holds that to be substantial evidence, opinions must at least be from examiners, and we urge within the reporter's area of expertise.") The ALJ's decision here was based on more than just the administrative reviewers' assessments, as discussed above. But even were it not so, Hammond's wider proposition overreads <u>Richardson</u> far beyond its pages. <u>Richardson</u> itself contemplated the use of "medical adviser[s]" to provide evidence, even those who had not examined the patient but nonetheless examined their records and gave an opinion as to their condition. <u>See</u> <u>Richardson</u>, 402 U.S. at 408. Further, federal regulations require ALJs to evaluate administrative medical evidence "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§

-22-

404.1513a(b)(1). As a matter of law, these opinions must at least be considered. Where the ALJ finds them substantiated and consistent, they are within their role in finding them persuasive as well.

Lastly, Hammond functionally asks the court to reweigh the evidence and credit the opinion of Dr. Samuel Chung more than the ALJ did. (ECF No. 17 at 10-13, 18) ("We respectful urge that Dr. Chung's opinions are entitled to great weight.") The court cannot. Blakely, 581 F.3d at 406 ("the substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts") (citing Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). The undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provides substantial evidence to support the ALJ's decision.

**D.   Other Arguments**

Hammond makes two other arguments that are not wholly dependent on medical opinion evidence. First, Hammond states that she is still disabled even if able to perform sedentary work, due to the Medical-Vocational Guidelines Rules 201.12 and 201.14. Both of these guidelines suggest findings of "not disabled" under certain circumstances. 20 C.F.R. Pt. 404, Subpt. P, App'x 2.

-23-

Hammond's argument appears to be a misreading of the Medical-Vocational Guidelines Table No. 1 and it is not persuasive.

Second, Hammond argues that the ALJ failed to consider musculoskeletal listings that would have led to a finding of "disabled." She argues that the ALJ's finding that she could not "walk on rough or uneven surfaces clearly meets or equals the listing section." (ECF No. 17 at 13.) Hammond does not provide a citation to the listing section she references, nor evidence that she fulfills its requirements. All that is offered is a quote allegedly from "Administrative Appeals Judges Kerr and Parisi" that states "such a limitation *may* meet or equal the severity of the listings for musculoskeletal impairments." (Id.) (emphasis added). The case this quote allegedly comes from is also not cited or provided. This argument is not sufficiently developed and is therefore waived. See Leary, 528 F.3d at 449; see also Rogers, 486 F.3d at 247 ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham  ____
TU M. PHAM

-24-

Chief United States Magistrate Judge

September 30, 2021_____   _____
Date